Day, J.
 

 At the outset, it must be stated that the effect of the discrepancy between the applicant’s occupation as described on the face of the application and that as described in the medical examiner’s report on the reverse side of the application, is not in issue. Nor is the question whether the applicant was insurable under the rules of the company presented as an issue.
 

 The sole question presented for our determination is whether the appellee insurance company is liable under the terms and provisions of its receipt, since the applicant died subsequently to the issuance of the receipt but before the application had been “approved and accepted.”
 

 The type of receipt here involved is generally re
 
 *445
 
 ferred to as a “binding slip,” “interim receipt” or “binder.”
 

 In 29 American Jurisprudence, 158, Section 143, it is stated that: “A binding slip or interim receipt, also called a ‘binder,’ is ordinarily a document given to the insured to bind the company in case a loss occurs pending action upon the application and the actual issuance of a policy. It is generally held that such a slip or receipt issued by the duly authorized agent of an insurance company constitutes a temporary contract of insurance under which the company is liable for any loss occurring during the period covered by it.” See, also, 1 Couch Cyclopedia of Insurance Law, 162, Section 91.
 

 Such receipts have been variously construed by the courts, depending in great part upon the particular wording of the provisions therein contained. See collection of cases in 81 A. L. R., 332; 107 A. L. R., 194.
 

 Determination of the issue in the instant case requires construction of the receipt.
 

 In
 
 Copelin-Mohn, Inc.,
 
 v.
 
 Buckeye Union Casualty Co.,
 
 135 Ohio St., 287, at page 290, 20 N. E. (2d), 713, the court said: “It is a rule of construction generally followed that where an insurance contract is so drawn as to be equivocal, uncertain or ambiguous, and be fairly susceptible to two or more different but sensible and reasonable constructions, the one will be adopted which, if consistent with the objects of the insurance, is most favorable to the insured.
 
 Great American Mutual Indemnity Co.
 
 v.
 
 Jones,
 
 111 Ohio St., 84, 144 N. E., 596, 35 A. L. R., 1023; 22 Ohio Jurisprudence, 340, Section 185; 1 Couch Cyclopedia of Insurance Law, 375, Section 188.”
 

 The language in the receipt requiring construction reads: “No liability is assumed by the company on account of this payment nor until it shall issue a policy, but if death occurs
 
 after the date of the application
 
 * * # and prior to the date of issue of such policy, payment in accordance with and subject to the conditions
 
 *446
 
 and provisions of the policy applied for shall be made; provided the applicant is insurable under the company’s rules and the application is approved and accepted by it at its home office as to plan, premium and amount of insurance.” (Italics ours.)
 

 Appellant contends that from the above-quoted language it may reasonably be inferred that the parties intended interim or temporary insurance to go into effect immediately upon the payment of the initial premium and issuance of the receipt; that the interim or temporary insurance thus effected was to be for the period between the making of the application and its approval and acceptance or rejection by the insurer.
 

 Appellee, on the other hand, contends that both the application and the receipt expressly provided that there was to be no liability until a policy was issued unless the initial premium was paid at the time the application was signed, in which event payment would be made if death occurred prior to the issuance of the policy, and provided the application was accepted and approved at the home office as to plan, premium and amount of insurance; and that since the application was never accepted or approved by the company, it follows that no contract was ever made, and consequently liability does not arise.
 

 From the language “provided the applicant is insurable under the company’s rules and the application is approved and accepted by it [the company] at its home office as to plan, premium and amount of insurance,” it is possible to construe the meaning of the receipt to be that it was the intention of the parties that liability should not attach to the company unless the applicant was -an insurable risk and until the application was approved and accepted “ as to plan, premium and amount of insurance.”" Yet, from the language “but if death occurs
 
 after the date of the application * * *
 
 and prior to the date of issue of such policy, payment in accordance with and subject to the conditions and pro
 
 *447
 
 visions of the policy applied for shall be made,” it is equally possible to construe the meaning of the receipt to be that it was the intention of the parties that liability should attach to the company if death should occur “after the date of the application.” Otherwise, the words “after the date of the application” would be devoid of any meaning and be superfluous. (Italics ours.)
 

 Were it the intention of the parties that liability should not attach “after the date of the application” but should attach only after approval and acceptance and before the policy is issued, would not that language, or language of similar import, have been used? Surely, the words “after the date of the application” were intended to have some meaning and binding force and effect. The provisions of the receipt are obviously ambiguous and susceptible of two different constructions. It was possible for the appellee, as composer of the provisions of the receipt, to have been clear and thereby to avoid ambiguity. “An insurer will not be permitted to benefit from an ambiguity of his own creation.” Cope
 
 lin-Mohn, Inc.,
 
 v.
 
 Buckeye Union Casualty Co., supra,
 
 at page 291.
 

 Under the rule of construction laid down in
 
 Copelin-Mohn, Inc.,
 
 v.
 
 Buckeye Union Casualty Co., supra,
 
 the ambiguity must be resolved against the author, the appellee herein, and the parties must be deemed to have intended that interim or temporary insurance should go into effect immediately upon the signing of the application and payment of the initial premium.
 

 Where a “binding receipt” is issued by a life insurance company to an applicant, providing that no liability is assumed by the company on account of the initial premium payment “nor until it shall issue a policy, but if death occurs after the date of the application # * * and prior to the date of issue of such policy, payment in accordance with and subject to the conditions and provisions of the policy applied for shall be made; provided the applicant is insurable under the com
 
 *448
 
 pany’s rules and the application is approved and accepted by it at its home office as to plan, premium and amount of insurance,” the parties will be deemed to have intended to effect a present contract of interim or temporary insurance on the life of the applicant, to commence immediately upon the signing of the application and payment of the initial premium.
 

 Judgment of the Court of Appeals reversed and that of the Municipal Court affirmed.
 

 Weygandt, C. J., Zimmerman, Turner, Matthias and Hart, JJ., concur.,
 

 Williams, J., dissents.